Thomas C. Horne
Attorney General

Michael K. Goodwin, Bar No. 014446
Assistant Attorney General
Christopher Munns, Bar No. 022611
Assistant Attorney General
1275 W. Washington
Phoenix, Arizona 85007-2997
Telephone: (602) 542-7674
Facsimile: (602) 542-7644
Michael.Goodwin@azag.gov

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| National Labor Relations Board,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>State of Arizona,<br><br>　　　　　Defendant. | Case No: CV11-00913-FJM<br><br>**STATE'S MOTION TO DISMISS**<br><br>(Oral Argument Requested) |

## Introduction

Last Election Day, the people of Arizona overwhelmingly approved an amendment to the Arizona Constitution guaranteeing the right to vote by secret ballot in elections for employee representation. The National Labor Relations Board now seeks to invalidate the Arizona Amendment based on preemption. The Board's hostility to secret ballot elections is remarkable given that the Board itself is responsible for conducting them, not to mention that secret ballot elections are one of our most precious democratic traditions.

More to the point, the Board is asking this Court to decide an imaginary dispute. For that reason, the Board's suit fails to satisfy Article III requirements for jurisdiction or to demonstrate that this Court should exercise its discretion to provide declaratory relief.

Defendant State of Arizona therefore moves, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss this action for lack of jurisdiction.

## I.   FACTUAL BACKGROUND

### A.   The Arizona Amendment

In the 2010 general election, Arizona voters approved Proposition 113. The Amendment, now codified as Article 2, § 37 of the Arizona Constitution, provides:

> The right to vote by secret ballot for employee representation is fundamental and shall be guaranteed where local, state or federal law permits or requires elections, designations or authorizations for employee representation.

The measure passed by a margin of 978,109 (61 %) to 639,692 (39 %). The Amendment went into effect on December 14, 2010, by proclamation of Governor Jan Brewer.

### B.   The NLRA and the Board

The Board is a federal agency charged with the administration of the National Labor Relations Act ("NLRA"). (Compl., ¶ V.) The Board's two main functions are to conduct secret ballot elections to determine whether employees want to have a union as their bargaining representative, and to prevent and remedy unfair labor practices by employers and unions. *See* http://nlrb.gov/what-we-do. Section 9 of the NLRA, 29 U.S.C. § 159, authorizes the Board to conduct elections that give employees the opportunity to select a union as their bargaining agent. Elections conducted by the Board must be by secret ballot. 29 U.S.C. § 159(c),(e); NLRB Rules & Regulations, § 102.69.

Under Board policy, an employer may voluntarily recognize and bargain with a union upon a showing, usually by signed authorization cards, that a majority of employees want the union as their bargaining representative. An employer is under no obligation to accept authorization cards as proof of a union's majority status. *Jefferson Smurfit Corp.*, 331 NLRB 809 (2000). If an employer declines a union's request for voluntary recognition, the only way for the union to become the bargaining representative is to petition the Board for a secret ballot election and then win the

1  election.  *See Linden Lumber v. NLRB*, 419 U.S. 301, 310 (1974).  Even if an employer
2  voluntarily recognizes a union, the employer or employees may later petition the Board
3  to decertify the union based upon evidence that the union lacks the support of a majority
4  of employees.  29 U.S.C. § 159(c)(1); *see also Dana Corp.*, 351 NLRB 434 (2007).  If
5  the Board determines that a petition raises a question concerning representation, it will
6  conduct a secret ballot election.  29 U.S.C. § 159(e).
7       The "preferred" route for a union to obtain recognition as the bargaining
8  representative for employees is through a Board-conducted secret ballot election.  *NLRB*
9  *v. Gissel Packing Co.*, 395 U.S. 575, 596 (1969).  Indeed, under the NLRA, a secret
10 ballot election is the only way for a union to be the certified bargaining representative for
11 a group of employees.  *Id*. at 598-99.
12     **C.**    **This Litigation**
13      The Board filed a Complaint for Declaratory Judgment against the State.  (Doc.
14 1.)  The Board alleges that "Arizona Constitution Article 2 § 37 . . . conflicts with the
15 rights of private sector employees under the National Labor Relations Act. . . and is
16 therefore preempted."  (Compl., ¶ I.)  The Board seeks a declaration that the
17 Amendment, "to the extent that it applies to private employees, employers, and labor
18 organizations subject to the National Labor Relations Act (29 U.S.C. § 151 et seq.) is
19 preempted by the National Labor Relations Act and the Supremacy Clause of the United
20 States Constitution."[1]
21 **II.**    **LEGAL DISCUSSION**
22     **A.**    **Legal Standard**
23      The question whether subject matter jurisdiction exists is one of law.  *Kingman*
24 *Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189 (9th Cir. 2008).  "Unlike a
25 Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined by the
26 facts contained in the four corners of the complaint—it may consider facts and need not

---

27 [1] Section 37 makes no distinction between private and public employers.  The NLRA does not cover public employers.  29 U.S.C. § 152(a)(2).  The Board tacitly concedes
28 that the Amendment poses no constitutional problem insofar as it applies to public employers.

assume the truthfulness of the complaint." *Americopters, LLC v. FAA*, 441 F.3d 726, 732 n. 4 (9th Cir. 2006). On a motion to dismiss, the court is not required to assume the truth of legal conclusions, *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003), and the court may properly look beyond the complaint to matters of public record. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of official information on government website); *see also* Fed. R. Evid. 201.

As the plaintiff, the Board has the burden of establishing that this Court has jurisdiction. *Kokkonen v. Guardian of Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). At the pleading stage, the Board may satisfy this burden by alleging facts that, if proven, establish the court's jurisdiction. *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771 (9th Cir. 2006).

**B.   The Board's Complaint Fails to Present a Case or Controversy.**

**1.   The Board lacks standing.**

Under Article III of the United States Constitution, a party must demonstrate standing in order to satisfy the "case or controversy" requirement necessary for a federal court to exercise its judicial power. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In *Lujan*, the Supreme Court identified three elements necessary to establish Article III standing: (1) an injury-in-fact to a legally protected interest that is concrete and particularized or actual or imminent; (2) a causal connection between their injury and the conduct complained of; and (3) that it is likely, note merely speculative, that their injury will be redressed by a favorable decision. *Id.* at 560-61; *see also Raines v. Byrd*, 521 U.S. 811, 818-19 (1997) (holding that individual members of Congress lacked standing to challenge constitutionality of line item veto); *Western Min. Council v. Watt*, 643 F.2d 618, 623 (9th Cir. 1981) (commenting that standing requires a plaintiff to allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues"). The Board cannot meet these requirements.

4

The Board's Complaint contains no allegation or theory regarding how Arizona's secret-ballot amendment causes the Board a concrete and particularized injury. The Amendment does not regulate the Board and it does not interfere with the Board's activities or operations. The Board does not allege that there is any proceeding in state court or in any state administrative tribunal to enforce the Amendment. The Board's opposition to the secret-ballot amendment is a mere "generalized grievance." *See Lujan*, 504 U.S. at 575. The Board's allegations are insufficient to establish an injury-in-fact.

Because the Board has not alleged an injury, it also has not alleged a causal connection between an injury and State action. Moreover, the Board has not alleged that the State or any state agency or employer has the authority to enforce the Amendment. Thus the Board cannot establish that declaratory relief would redress any injury. A declaration would make the Board no better off. In sum, the Board cannot establish any of the elements for Article III standing.

## 2. This case is not ripe for adjudication.

Even if the Board had demonstrated it may suffer injury, such injury may never happen. Under Article III, a constitutional case or controversy sufficient to support federal court jurisdiction requires a dispute presenting issues that are "definite and concrete, not hypothetical or abstract." *Scott v. Pasadena Unified School District*, 306 F.3d 646, 663 (9th Cir. 2002). The ripeness doctrine "is peculiarly a question of timing." *Stormans*, 586 F.3d at 1122. The "'basic rationale' . . . is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Scott*, 306 F.3d at 662 (quoting *Abbott Lab. v. Gardner,* 387 U.S. 136, 148 (1967)). The NLRB presents no claim that is ripe for judicial review because it does not allege an actual injury or a realistic danger of imminent injury.

The constitutional component of ripeness requires that a plaintiff demonstrate "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979)). The analysis of ripeness

often "coincides squarely with standing's injury in fact prong," leading courts to characterize it as "standing on a timeline." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1122 (9th Cir. 2009). Accordingly, the Board must demonstrate injury in fact "to a legally protected interest that is both 'concrete and particularized' and 'actual or imminent,' as opposed to 'conjectural or hypothetical.'" *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). When the claim involves prospective relief for a future injury, "[t]he question becomes whether any perceived threat to [the plaintiff] is sufficiently real and immediate to show an existing controversy." *Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 689 (9th Cir. 2010) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982)). The Board fails to allege an injury that satisfies these requirements.

The Complaint does not allege that the Amendment injures or interferes with the Board in any way. The Amendment specifies that employees' right to vote by secret ballot is guaranteed in designating a collective bargaining representative when it is permitted or required by applicable law. Ariz. Const., Art. 2, § 37. Therefore, the Amendment directly affects the relationship between a group of employees and their employer in the context of collective bargaining. It imposes no new duties or obligations on the Board, and the Board has failed to demonstrate that the Amendment interferes with its ability to regulate the collective bargaining relationship. Also, there is no threat of prosecution or enforcement against the Board, any employer or any employee. The State does not enforce the Amendment as it would a regulatory prohibition or penal statute. Rather, rights created under the Amendment will be enforced by affected parties in the collective bargaining process, either in an unfair labor practice complaint before the Board or in a judicial proceeding. In light of the foregoing, the Board cannot demonstrate that the operation of the Amendment poses any danger of direct injury to its legal interests.

The Board also attempts to demonstrate its injury by asserting potential injury to third parties—namely, employees seeking to organize by non-election methods such as

1 voluntary recognition. (Compl., ¶ XIII.) But potential injury to employees seeking to
2 organize does not create an injury in fact sufficient to support the ripeness of the Board's
3 claims. See *Lopez*, 630 F.3d at 792 ("Plaintiffs who have suffered no injury themselves
4 cannot invoke federal jurisdiction by pointing to an injury incurred only by third
5 parties.") Here, the Board only alleges that the Amendment results in private employees
6 losing the ability to designate a bargaining representative by means other than a secret
7 election. This does not establish an injury in fact to the Board.

8       Even if the Board could claim injury based on this harm to third parties, it is not
9 certain that the employees will suffer the injury the Board asserts. The Amendment does
10 not interfere with employee rights under the NLRA. The Board misconstrues the
11 Amendment to *require* a secret ballot election in every situation where a collective
12 bargaining representative is to be designated. But it does no more than guarantee that
13 the secret ballot election is available. The Board assumes that the Amendment
14 forecloses voluntary recognition as a route to union representation in Arizona. (Compl.,
15 ¶ XIII.) This assumption is unwarranted. The Board has not identified who would take
16 steps to force the employees to undergo a secret ballot election or what mechanisms
17 could be used to impose such a requirement. Because the State has no enforcement
18 authority under the Amendment, any enforcement of a right to secret ballot election
19 would be taken by the employees or employers themselves. But there is no evidence that
20 there will be a disagreement about the voluntary recognition of a collective bargaining
21 representative. Only when there is a concrete dispute will the decision-maker be able to
22 determine if there is a conflict between Board policy and the Arizona Constitution. The
23 Board's claim, therefore, "rests upon contingent future events that may not occur as
24 anticipated or indeed may not occur at all." *Bova v. City of Medford*, 564 F.3d 1093,
25 1096 (9th Cir. 2009) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998) and
26 finding that challenge to city's discontinuing health insurance to retired workers was
27 unripe because plaintiffs had not yet retired and city had not denied them benefits). Such
28 a claim is not ripe for adjudication.

7

The Court's role "is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Stormans*, 586 F.3d at 1122.  Because of its reliance on injuries to third parties and on speculation about contingent events that may never occur, the Complaint fails to establish a real and immediate threat to Board of injury arising from operation of the Amendment and, therefore, presents no case or controversy ripe for judicial review.

### 3. Prudential considerations also militate against the exercise of jurisdiction.

Because the case fails to satisfy the constitutional requirements for ripeness, the Court need not reach the prudential components.  Nevertheless, the prudential components also support dismissing this lawsuit.  Ripeness provides "a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial." *Am. Sav. Bank* v. *UBS Fin. Servs.*, 347 F.3d 436, 440 (2d Cir. 2003).  In applying the prudential ripeness doctrine, the Court considers two factors:  (1) the "fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Stormans*, 586 F.3d at 1126.

The first factor focuses on whether "the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Id.* (quoting *US West Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999)).  "[A] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *See Bova*, 564 F.3d at 1096 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).  In conducting this analysis, the Court should look primarily to the factual situation presented for consideration.  "A concrete factual situation is necessary to delineate the boundaries of what conduct the government may or may not regulate." *San Diego County*, 98 F.3d at 1132.

1  The reluctance to decide important questions of law based on hypothetical
2 situations springs from the principle that courts do not decide "constitutional questions in
3 a vacuum." *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 849
4 (9th Cir. 2007).  Federal courts are appropriately cautious about "premature
5 adjudication" of questions concerning the constitutionality of a "novel [s]tate Act."
6 *Arizonans for Official English v. Arizona,* 520 U.S. 43, 79 (1997).  If raised in the
7 context of an actual controversy between parties that have suffered injury in fact, the
8 reviewing court will have concrete facts to evaluate when it examines the issues
9 presented.
10  This case does not involve purely legal issues because, in challenging the
11 Amendment, the Board relies entirely on a hypothetical situation that may never occur,
12 namely, a group of hypothetical employees somehow being forced to conduct a secret
13 ballot election against their will.  The Board interprets the Amendment to require a secret
14 ballot election in every situation where a group of private employees seek to designate a
15 representative for collective bargaining, even if the employer wants to voluntarily
16 recognize a representative selected by a majority of the employees.  (Compl., ¶ XIII.)
17 However, the language of the Amendment guarantees the "right to vote by secret ballot"
18 and does not require an election.  Just as federal law provides for elections and allows
19 other means of completing a majority-approved designation, the Amendment also makes
20 clear that a group of employees have the right to a secret ballot election.  It does not
21 force them to exercise that right.  The Board does not allege who will take action to stop
22 the voluntary recognition of a selected representative or how the Amendment would be
23 exploited to achieve that result.  There is simply no evidence that the Amendment will
24 upset the business of selecting collective bargaining representatives.  It is just as likely
25 that the process will continue the same as it had before the Amendment.  If an employee
26 or employer believes that the Amendment requires a secret ballot election in every
27 instance of selecting a representative, one or the other can raise the issue in a complaint
28

9

to the Board as an unfair labor practice. But at this time and with these parties, there is no actual case or controversy for the Court to address.

Under the second factor, the Court examines whether "withholding review would result in direct and immediate hardship and would entail more than possible financial loss." *Stormans*, 586 F.3d at 1126 (quoting *MFS Intelenet*, 193 F.3d at 1118). The Court also determines whether the "regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Id.* (citing *Ass'n of Am. Med. Colls. v. United States,* 217 F.3d 770, 783 (9th Cir. 2000)). "Although the constitutional and prudential considerations are distinct, the absence of any real or imminent threat of enforcement, particularly criminal enforcement, *seriously undermines* any claim of hardship." *Thomas*, 220 F.3d at 1142 (emphasis added)*; see also San Diego County*, 98 F.3d at 1132-33 (concluding that, in light of absence of any criminal charges or threat of prosecution, any hardship "does not justify the exercise of jurisdiction"). The Amendment imposes no obligation on the Board and there is no threat of enforcement against the Board. The Amendment does not create restrictions or prohibitions that would alter the way the Board conducts business or regulates collective bargaining between employers and employees. Thus, the Board cannot establish any injury if the Court declines to adjudicate the claims asserted in the Complaint. Rather, the Court can more effectively decide these issues in the future if and when either a group of employees or an employer raise them in the course of an effort to designate a collective bargaining representative. For these reasons, the prudential aspects of ripeness also support dismissing this action. *See San Diego County*, 98 F.3d at 1133.

**C.   There is no proper statutory basis for jurisdiction.**

The Board alleges that the Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337. (Compl., ¶ III.) The former confers jurisdiction over actions "arising under" federal law and the latter confers jurisdiction over actions "arising under any Act of Congress regulating commerce." The Board says its suit arises under the NLRA and the

1   Supremacy Clause.  It is true that the NLRA is a federal law and that it regulates
2   commerce.  *See Capital Service, Inc. v. NLRB*, 347 U.S. 501, 504 (1954).  The NLRA
3   authorizes the Board to petition a court for enforcement of a Board order, to seek review
4   of a final Board order, to seek injunctions against persons believed to be engaged in
5   unfair labor practices or illegal boycotts, and to enforce subpoenas.  29 U.S.C. §§ 159-
6   160.  But because the Board is not doing any of those things here, this action does not
7   arise under the NLRA and neither § 1331 nor § 1337 provide a basis for jurisdiction.

8           Although federal courts have allowed the Board to bring actions not expressly
9   authorized by the NLRA, those cases involved ongoing litigation that usurped Board
10  authority.  In *NLRB v. Nash-Finch Co.*, 404 U.S. 138 (1971), a union filed a charge with
11  the Board accusing the employer of unfair labor practices.  After a hearing but before the
12  Board took final action on the complaint, the employer obtained an injunction in state
13  court against the union's picketing activities.  The Board then filed suit in federal court
14  to restrain the enforcement of the state court injunction on the ground that it regulated
15  conduct that was governed exclusively by the NLRA, and the question arose whether the
16  court could entertain the action.  The Supreme Court held that the Board had "implied
17  authority. . . to enjoin state action where its federal power preempts the field."  *Id*. at
18  144.

19          The Ninth Circuit examined the scope of *Nash-Finch* jurisdiction in *NLRB v.*
20  *California Horse Racing Board*, 940 F.2d 536 (9th Cir. 1991).  There, an employer filed
21  an unfair labor practice charge with the Board because the employer had been ordered by
22  a state agency (CHRB) to enter into a collective bargaining agreement with a union.  In
23  turn, the Board filed suit in federal court seeking to enjoin enforcement of the CHRB's
24  order and a declaration that CHRB jurisdiction over the employer was preempted.  *Id.* at
25  538.  The district court granted the injunction.  *Id.*  On appeal, the Ninth Circuit
26  emphasized that the Board had jurisdiction over the employer and that the NLRA
27  provided for the Board adjudication of the unfair labor practice charge and appellate
28  review in federal court.  *Id*. at 541.  The Ninth Circuit recognized that while the purpose

11

of *Nash-Finch* jurisdiction was to protect NLRA preemption, a district court's *Nash-Finch* jurisdiction "must be no broader than necessary to accomplish its purpose" and is limited by the NLRA's scheme of appellate review. *Id.*

The *Nash-Finch* rationale provides no basis for jurisdiction over this action. There is no unfair labor practice charge before the Board involving Arizona's secret ballot amendment. No one has brought an action to enforce the Amendment. How a dispute between actual employees and an employer regarding the application of the Amendment might come within the Board's jurisdiction can only be imagined. Should such a dispute occur in the context of an unfair labor practice proceeding, the Board itself could determine the factual and legal issues, including any preemption issues, necessary to the resolution of the charge. The Board's determination would be subject to review by the Ninth Circuit. *See* 29 U.S.C. § 160(e)-(f). In other words, the NLRA's own enforcement scheme would allow the Board to resolve any conflict between the NLRA and the Amendment, and there would be no need for a district court to intervene. Only if one of the parties to such a dispute sought relief in state court would there be any occasion for a district court to consider exercising *Nash-Finch* jurisdiction. Because there has been no such encroachment on the Board's jurisdiction here, *Nash-Finch* jurisdiction is unjustified.

    **D.**    **Even if jurisdictional prerequisites are met, this Court should decline jurisdiction.**

The Board seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. That statute provides that in a case of actual controversy within its jurisdiction, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The statute "confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995); *Public Svc. Comm'n v. Wykoff*, 344 U.S. 237, 241 (1952). Emphasizing the discretionary nature of the statute, the Supreme Court held in *Wilton* that district courts may decline to exercise their discretion to entertain an action "even

1  when the suit otherwise satisfies subject matter jurisdictional prerequisites." 515 U.S. at
2  282.
3        Both the Supreme Court and the Ninth Circuit have said that district courts should
4  use caution when exercising their discretion. "Especially where governmental action is
5  involved, courts should not intervene unless the need for equitable relief is clear, not
6  remote or speculative." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 434
7  (1948); *see also Washington Pub. Power Supply Sys. v. Pac. Nw. Power Co.*, 332 F.2d
8  87, 88 (9th Cir. 1964) (repeating admonition against making declaratory judgment "upon
9  issues of public moment" unless the need is clear). As discussed above, the need for
10 declaratory relief here is both remote and speculative.
11       There are other compelling reasons for the Court not to intervene. The people of
12 Arizona adopted the Amendment and made it a part of the Arizona Constitution. A
13 challenge to a state law, especially one adopted through the initiative process, presents
14 issues of federalism. The Supreme Court has said that traditional principles of comity
15 and federalism are relevant to a district court in exercising its discretion whether to issue
16 a declaratory judgment. *See Green v. Mansour*, 474 U.S. 64, 72-73 (1985); *cf. Alden v.*
17 *Maine*, 527 U.S. 706, 748 (1999) ("our federalism requires that Congress treat the states
18 in a manner consistent with their status as residuary sovereigns and joint participants in
19 the governance of the Nation").
20       "The normal principle that federal courts should adjudicate claims within their
21 jurisdiction yields to considerations of practicality and wise judicial administration."
22 *Wilton*, 515 U.S. at 288. Based on the absence of a concrete controversy, the availability
23 of Board procedures to resolve a dispute regarding the Amendment if one arises, and
24 considerations of comity and federalism, this Court should decline jurisdiction over this
25 declaratory judgment action.
26 **III.   CONCLUSION**
27       Federal courts may decide cases or controversies. The imagined conflict between
28 the NLRA and Article 2, § 37 of the Arizona Constitution does not present a case or

13

1  controversy that this Court can or should decide.  The Board's Complaint for

2  Declaratory Judgment should be dismissed.

3      Respectfully submitted this 31st day of <u>May</u>, <u>2011</u>.

4      Thomas C. Horne
    Attorney General

5

6      <u>s/Michael K. Goodwin</u>
    Michael K. Goodwin

7      Christopher Munns
    Assistant Attorney General

8      Attorneys for Defendant

9

10 I certify that I electronically transmitted the attached document

11 to the Clerk's Office using the CM/ECF System for filing and

12 transmittal of a Notice of Electronic Filing to the following, if CM/ECF

13 registrants, and mailed a copy of same to any non-registrants, this

14 <u>31st</u> day of <u>May</u>, <u>2011</u> to:

15

16 Eric G. Moskowitz
Abby Propis Simms
Laura Bandini

17 Mark G. Eskenazi
National Labor Relations Board

18 Special Litigation Branch
1099 14th Street, N.W., Suite 8600

19 Washington, DC  20570
Attorneys for Plaintiff

20

21  <u>s/Rebecca Warinner</u>
Attorney General Secretary

22

23 #1916247

24

25

26

27

28

14