**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| National Labor Relations Board, | ) | CV 11-00913-PHX-FJM |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| State of Arizona, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The court has before it defendant's motion to dismiss (doc. 6), plaintiff's response (doc. 15), and defendant's reply (doc. 16).  We also have before us intervenor-defendants' motion to intervene (doc. 7), plaintiff's response (doc. 8), and intervenor-defendants' reply (doc. 11).

## I. Background

On November 2, 2010, Arizona voters approved amending the Arizona Constitution to include Article 2 § 37.  Article 2 § 37, drafted by the non-profit organization Save Our Secret Ballot, states that "[t]he right to vote by secret ballot for employee representation is fundamental and shall be guaranteed where local, state or federal law permits or requires elections, designations or authorizations for employee representation."  Az. Const. art. 2, § 37.  The amendment became effective on December 14, 2010.

Plaintiff National Labor Relations Board (NLRB), an agency of the United States tasked with the administration of the National Labor Relations Act (NLRA), 29 U.S.C. § 151

*et seq*., filed this action on May 6, 2011.  Plaintiff first alleges that Article 2 § 37 "requires elections where federal law does not," thus depriving employees in the private sector of "their right to pursue the other options permitted by federal law" to choose representatives and to secure their employers' "voluntary recognition" of those representatives. Compl. at 4.  Thus, according to plaintiff, Article 2 § 37 is preempted by operation of 29 U.S.C. § 157, which affords covered employees the right to choose representatives by voluntary recognition. Alternatively, even if Article 2 § 37 merely supports the guarantee of a secret ballot election when the voluntary recognition route is not selected, plaintiff claims that the amendment is preempted by its creation of "a parallel state enforcement mechanism for protecting employee representation rights that Congress assigned to the" NLRB. Id.  Plaintiff seeks a declaratory judgment that Article 2 § 37 is preempted by the NLRA and the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl.2, to the extent that it applies to employers, private employees, and labor organizations subject to the NLRA.  Defendant filed a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P. Save Our Secret Ballot and thirty-four Arizona residents subsequently filed a motion to intervene as defendants.  Thirty-three residents are in the class of people eligible to organize a union, and one resident is employed as a public school teacher.

## II. Standing

Defendant argues that plaintiff lacks constitutional standing.  Article III of the Constitution limits federal court jurisdiction to cases and controversies. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559, 112 S. Ct. 2130, 2136 (1992).  Standing is a "core component" of determining whether a case or controversy exists. Id. at 560, 112 S. Ct. at 2136.  The plaintiff bears the burden of establishing all three elements of constitutional standing: (1) the plaintiff suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent," (2) the existence of a "causal connection between the injury and the conduct complained of" that is fairly traceable to defendant's action, and (3) the likelihood that plaintiff's injury can be redressed by a decision in his favor. Id. at 560-61, 112 S. Ct. at 2136.

1    To determine whether a sufficient injury in fact exists, the "touchstone" is whether
2    plaintiff "has suffered an injury or threat of injury that is credible," not speculative. Lopez
3    v. Candaele, 630 F.3d 775, 786 (9th Cir. 2010).   According to defendant, plaintiff's
4    allegations cannot establish an injury in fact, because Article 2 § 37 neither regulates nor
5    interferes with plaintiff's operations, and there is no allegation of any pending state
6    proceeding to enforce the provision.  Thus, defendant argues that plaintiff's opposition to
7    Article 2 § 37 is a generalized grievance not amounting to an injury.  Defendant also argues
8    that plaintiff has not alleged a causal connection and cannot establish that declaratory relief
9    would redress any injury.  Plaintiff contends that it has alleged the following injuries: 1) the
10   impeding of employee and employer rights to establish a bargaining relationship by means
11   other than a secret ballot election, 2) the impairment of plaintiff's ability to efficiently carry
12   out its mission of protecting NLRA rights, and 3) the grant of jurisdiction to state courts to
13   resolve issues assigned to plaintiff by Congress.

14   Plaintiff urges that the "permits or requires" language in Article 2 § 37 means that in
15   Arizona, a secret ballot election is now required every time an election is permitted, thus
16   foreclosing an employee's right under Section 7 of the NLRA to engage in voluntary
17   recognition of a bargaining representative via other means.  Defendant maintains that the
18   amendment merely guarantees the right to vote by secret ballot once employees have selected
19   to hold an election rather than pursue voluntary recognition. We need not determine the
20   meaning of the amendment to ascertain whether jurisdiction lies, because under either
21   interpretation of Article 2 § 37 plaintiff has sufficiently alleged an injury.

22   United States labor policy as articulated in the NLRA is, among other things, to
23   eliminate obstructions to the flow of commerce "by encouraging the practice and procedure
24   of collective bargaining and by protecting the exercise by workers of full freedom of
25   association, self-organization, and designation of representatives of their own choosing." 29
26   U.S.C. § 151.  Section 8(f) of the NLRA permits employers in the construction industry to
27   enter into pre-hire agreements with unions.  Id. § 158(f). Section 7 guarantees the right of
28   employees "to bargain collectively through representatives of their own choosing." Id. § 157.

1   Employees may choose a representative using either of two methods: (1) a secret ballot

2   election, or (2) voluntary recognition based on other evidence of majority support.  See

3   NLRB v. Gissel Packing Co., 395 U.S. 575, 596-97, 89 S. Ct. 1918, 1930-31 (1969).

4   Interference with, restraint of, or coercion with respect to an employee's Section 7 rights is

5   an unfair labor practice.  29 U.S.C. § 158(a)(1).

6          When creating the NLRB, Congress empowered it "to prevent any person from

7   engaging in any unfair labor practice. . . affecting commerce."    29 U.S.C. § 160(a).  If a

8   charge is made that anyone is engaging in an unfair labor practice, the NLRB has the power

9   to issue a complaint, hold a hearing, and order a person to stop the unfair practice.  Id. §§

10  160(b), 160(c).  "This power shall not be affected by any other means of adjustment or

11  prevention that has been or may be established by agreement, law, or otherwise."  Id. §

12  160(a). The purpose of the NLRA is to ensure that its substantive rules are uniformly applied

13  and to avoid conflicts resulting from a multitude of local procedures and attitudes.  NLRB

14  v. Nash-Finch Co., 404 U.S. 138, 144, 92 S. Ct. 373, 377 (1971).  To achieve Congress's

15  "overriding interest" that the NLRA be interpreted in a "uniform, nationwide" manner, the

16  Supreme Court has held that the enforcement power of the NLRB, the "centralized expert

17  agency" created by the NLRA, is exclusive.  New York Tel. Co. v. New York State Dept. of

18  Labor, 440 U.S. 519, 528, 99 S. Ct. 1328, 1334 (1979).  Uniform application of the NLRA

19  "not only demands that the NLRB's primary jurisdiction be protected, it also forecloses

20  overlapping state enforcement of the prohibitions in § 8 of the Act, as well as state

21  interference with the exercise of rights protected by § 7 of the Act."  Id. at 528, 99 S. Ct. at

22  1334-35 (citations omitted).  The Supreme Court recognized that the effect of the NLRA was

23  not just to create substantive labor law, but also to establish a central procedural framework

24  for resolving disputes:

25          Congress did not merely lay down a substantive rule of law to be enforced by
        any tribunal competent to apply law generally to the parties.  It went on to
26      confide primary interpretation and application of its rules to a specific and
        specially constituted tribunal and prescribed a particular procedure for
27      investigation, complaint and notice, and hearing and decision, including
        judicial relief pending a final administrative order.

28

1    Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 76, 346 U.S. 485, 490, 74 S.

2    Ct. 161, 165-66 (1953).  The court noted that the same reasoning that prohibits federal courts

3    and state administrative agencies from "assuming control of matters expressly placed within

4    the competence of the [NLRB] also exclude[s] state courts from like action."  Id. at 491, 74

5    S. Ct. at 166.  See also Amalgamated Util. Workers v. Consol. Edison Co. of New York, 309

6    U.S. 261, 264, 60 S. Ct. 561, 563 (1940) ("Congress declared that certain labor practices

7    should be unfair, but it prescribed a particular method by which such practices should be

8    ascertained and prevented.  By the express terms of the [NLRA], the [NLRB] was made the

9    exclusive agency for that purpose.").

10        Article 2 § 37 was approved by Arizona voters and has been added as an amendment

11   to the state constitution.  As such, a person who believes that his rights under Article 2 § 37

12   have been violated may bring an action in Arizona state court for relief.  See, e.g., Az. Const.

13   art. 6, § 14 (outlining original jurisdiction of superior court).  Although it is speculative

14   whether Article 2 § 37 will ever actually prevent someone from exercising his NLRA right

15   to elect a representative through voluntary recognition rather than secret ballot election,

16   plaintiff's injury has already occurred.  This is because the amendment itself creates a parallel

17   mechanism for a person alleging a violation of his right to a secret ballot election to seek

18   vindication.  Either he may file a charge with plaintiff, which then has the power to file a

19   complaint, investigate, and rule on whether the conduct amounted to an unfair labor practice,

20   see 29 U.S.C. § 160(b), or he may bring an action in an Arizona state court alleging that his

21   state constitutional rights have been infringed.  Arizona courts, as well as the NLRB, are now

22   tasked with ensuring that a person's right to vote by secret ballot in the labor context is not

23   impeded.

24        Thus, if Article 2 § 37 is preempted by the NLRA as plaintiff contends, then plaintiff's

25   exclusive authority to protect employee rights by the powers granted to it in § 160 of the

26   NLRA has been curtailed by Arizona's creation of a parallel enforcement mechanism.  See

27   Wisc. Dept. of Indus., Labor & Human Relations v. Gould, Inc., 475 U.S. 282, 286, 106 S.

28   Ct. 1057, 1061 (1986) (states prevented from providing own "judicial remedies for conduct

prohibited or arguably prohibited by the [NLRA]"); Garner, 346 U.S. at 501, 74 S. Ct. at 171 ("[T]he petitioners could have presented this grievance to the [NLRB]. The respondents were subject to being summoned before that body to justify their conduct. We think the grievance was not subject to litigation in the tribunals of the State."). The alleged incursion on plaintiff's exclusive enforcement powers is neither remote nor speculative. By the very existence of the amendment the injury has already occurred, and affects plaintiff's legal rights by undermining its exclusive authority to administer the NLRA. Similarly, plaintiff has pled a causal connection because it alleges that the addition of Article 2 § 37 to the constitution is the cause of its injury. Finally, plaintiff's injury can be redressed by a favorable decision in its favor. To analyze redressability we must assume that plaintiff's claim has merit and assess whether a favorable decision would likely redress plaintiff's injury. Bonnichsen v. United States, 367 F.3d 864, 873 (9th Cir. 2004). A declaratory judgment that Article 2 § 37 is preempted would redress plaintiff's injury by rendering the amendment unenforceable and affirming plaintiff's exclusive power to enforce § 7 and § 8 of the NLRA. Plaintiff has therefore met the constitutional requirements of standing.

### III. Ripeness

Next defendant argues that plaintiff's claim is not ripe. Ripeness contains both constitutional and prudential components. The focus of the constitutional inquiry is timing, and thus "ripeness can be characterized as standing on a timeline." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000). In order for a claim to be ripe, a plaintiff must have asserted a concrete, as opposed to a speculative injury. Id. at 1139. Defendant argues that plaintiff fails to allege a sufficiently concrete threat because Article 2 § 37 places no obligation on plaintiff to act, and there is currently no threat of prosecution or enforcement of the amendment against plaintiff, any employee, or any employer. According to defendant, rights created by the amendment will be enforced by parties through the collective bargaining process, "either in an unfair labor practice complaint before [plaintiff] or in a judicial proceeding." Mot. to Dismiss at 6. But this is precisely plaintiff's point. Article 2 § 37 has already opened the Arizona courthouses to people seeking to

enforce their right to a secret ballot election. This option for judicial relief exists whether anyone ever chooses to use it. Plaintiff's allegation that Article 2 § 37 creates a parallel enforcement mechanism for enforcement of rights that Congress assigned to it exclusively is therefore sufficiently concrete to satisfy constitutional ripeness.

The prudential component of ripeness requires us to analyze two main considerations: (1) the fitness of issues to be decided, and (2) any hardship that withholding consideration would cause the parties. Thomas, 220 F.3d at 1141. "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." Std. Alaska Prod. Co. v. Schaible, 874 F.2d 624, 627 (9th Cir. 1989). Defendant contends that this case does not involve purely legal issues because plaintiff is relying on a "hypothetical situation that may never occur, namely, a group of hypothetical employees somehow being forced to conduct a secret ballot election against their will." Mot. to Dismiss at 9. Thus, according to defendants, a more concrete factual record is needed to determine whether in fact Article 2 § 37 conflicts with and is preempted by the NLRA.

Addressing the merits of plaintiff's preemption claim will involve an assessment of whether the amendment's guarantee of secret ballot elections is "arguably subject" to § 7 or § 8 of the NLRA. See San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 245, 79 S. Ct. 773, 780 (1959). If so, then Arizona's regulation of this conduct will be preempted. See Bassette v. Stone Container Corp., 25 F.3d 757, 760 (9th Cir. 1994) (one purpose of Garmon preemption is to preserve NLRB's "sovereignty over determinations of which activities constitute violations of the NLRA, and which do not"). We do not need to wait for further facts to develop that will determine whether the amendment will be construed as plaintiff or defendant contends, because plaintiff alleges that the amendment is preempted simply due to the parallel enforcement scheme that it creates. Compl. at 4. The challenged action is final because the amendment has already been approved by voters and has been added to the constitution. Thus, the preemption issue is fit for review.

To assess hardship, we consider whether withholding review would create "direct and

1   immediate hardship" beyond potential financial loss. U.S. West Commc'ns v. MFS Intelenet,

2   Inc., 193 F.3d 1112, 1118 (9th Cir. 1999) (citation omitted).  Plaintiff argues that Article 2

3   § 37 impairs the performance of its assigned duties until remedied.  Congress exclusively

4   tasked plaintiff with enforcing the NLRA.  See New York Tel. Co., 440 U.S. at 527-58, 99

5   S.Ct. at 1334-35.  Given plaintiff's role in administering the NLRA, we agree that if

6   Arizona's amendment impairs plaintiff's enforcement authority, withholding judicial review

7   would impose hardship on plaintiff that is both direct and immediate.  Both constitutional and

8   prudential factors lead us to conclude that the issue presented is sufficiently ripe for review.

9   An Article III case or controversy therefore exists.

10              **IV. Statutory Jurisdiction**

11              Defendant argues that even if a justiciable Article III case or controversy exists, there

12  is no proper statutory basis for jurisdiction over plaintiff's preemption claim.  Plaintiff seeks

13  a declaratory judgment.  See 28 U.S.C. § 2202.  The Declaratory Judgment Act does not

14  alone provide subject matter jurisdiction. Nationwide Mut. Ins. Co. v. Liberatore, 408 F.3d

15  1158, 1161 (9th Cir. 2005).  Plaintiff contends that this court has jurisdiction under 28 U.S.C.

16  § 1331 and 28 U.S.C. § 1337.  Section 1331 confers jurisdiction over civil actions "arising

17  under the Constitution, laws, or treaties of the United States." Id. § 1331.  Section § 1337(a)

18  grants jurisdiction for "any civil action or proceeding arising under any Act of Congress

19  regulating commerce or protecting trade and commerce against restraints and monopolies."

20  Id. § 1337(a).  Defendant concedes that the NLRA is a federal law regulating commerce.

21  However, defendant contends that because plaintiff is seeking a declaratory judgment and

22  is not petitioning the court under circumstances expressly authorized by the NLRA, the

23  instant action does not "arise under" the NLRA.  See 29 U.S.C. §160 (authorizing the NLRB

24  to petition the district court to enforce an NLRB order and to seek injunctions against people

25  engaging in unfair labor practices).

26              For federal question jurisdiction to lie pursuant to 28 U.S.C. § 1331, there must be a

27  federal question "presented on the face of a properly pleaded complaint." United States v.

28  City of Arcata, 629 F.3d 986, 990 (9th Cir. 2010) (quoting JustMed, Inc. v. Byce, 600 F.3d

1118, 1124 (9th Cir. 2010)).  <u>Arcata</u> noted that the district court had § 1331 jurisdiction over

the government's complaint seeking a declaratory judgment that a city ordinance was invalid

under the Supremacy Clause.  <u>Id.</u>  The complaint "posed a federal question in its own right

because it sought invalidation of the ordinances under federal law."  <u>Id.</u>  Similarly, <u>Morros</u>

held that the district court had jurisdiction to consider the government's claim that a Nevada

statute stood as an obstacle to accomplishing the purposes of the federal Nuclear Waste

Policy Act ("NWPA") and was therefore preempted by the Supremacy Clause.  <u>United States</u>

<u>v. Morros</u>, 268 F.3d 695, 702 (9th Cir. 2001).  <u>Morros</u> noted that the outcome of the action

was controlled by an interpretation of the NWPA.  Under one interpretation of the NWPA,

the government would prevail.  Under another interpretation, however, the government

would lose.  <u>Id.</u> at 700.  Thus, jurisdiction was proper under the Supreme Court's

determination that jurisdiction lay in cases where

> the right of the petitioners to recover under their complaint will be sustained
> if the Constitution and laws of the United States are given one construction
> and will be defeated if they are given another, unless the claim clearly appears
> to be immaterial and made solely for the purpose of obtaining jurisdiction or
> where such a claim is wholly insubstantial and frivolous.

<u>Id.</u> (citing <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 89, 118 S. Ct. 1003, 1010

(1998)).

       As in <u>Morros</u>, the success of plaintiff's preemption claim depends on the interpretation

of the NLRA, a federal law.  <u>See California Fed. Sav. & Loan Ass'n v.</u> Guerra, 479 U.S. 272,

280, 107 S. Ct. 683, 689 (1987) ("In determining whether a state statute is pre-empted by

federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole

task is to ascertain the intent of Congress."); <u>Garmon</u>, 359 U.S. at 244, 79 S. Ct. at 779

(NLRA preempts state regulation when it is "clear or may fairly be assumed that the activities

which a State purports to regulate are protected by s 7 of the National Labor Relations Act,

or constitute an unfair labor practice under s 8").  If Article 2 § 37's protection of the right

to a secret ballot falls under the activities that the NLRA assigned to regulation by the

NLRB, then plaintiff will prevail.  If not, then plaintiff will lose.  Plaintiff's claim that the

1   Arizona constitutional amendment may conflict with enforcement rights exclusively assigned

2   to it by federal law is also substantial.  <u>See</u> 29 U.S.C. § 160(a) (NLRB's power to prevent

3   unfair labor practices "shall not be affected by any other means of adjustment or prevention

4   that has been or may be established by agreement, law, or otherwise); <u>Morros</u>, 268 F.3d at

5   702 (conflict between Nevada law authorizing a state-level decision and federal law

6   providing the decision will be made by federal government is substantial).

7          The NLRA does not explicitly authorize the NLRB to seek declaratory relief against

8   a state government on preemption grounds.  <u>See</u> 29 U.S.C. § 160.  However, the Supreme

9   Court in <u>Nash-Finch</u> recognized that it "has long been held that" the NLRB, "though not

10  granted express statutory remedies, may obtain appropriate and traditional ones to prevent

11  frustration of the purposes of the [NLRA]."  <u>Nash-Finch</u>, 404 U.S. 138 at 142, 92 S. Ct. at

12  376.  The Ninth Circuit has recognized that several courts, without directly considering the

13  limits of <u>Nash-Finch</u> jurisdiction, have "implicitly upheld the district courts' power to decide

14  whether state law has been preempted" by the NLRA).  <u>NLRB v. California Horse Racing</u>

15  <u>Bd.</u>, 940 F.2d 536, 541 n.5 (9th Cir. 1991).  We are persuaded that <u>Nash-Finch</u>, which

16  recognized the implict power of the NLRB to seek injunctive relief against state actions on

17  the basis of preemption, allows the NLRB to seek declaratory relief against similarly

18  preempted action.  <u>See id.</u> at 539 (purpose of <u>Nash-Finch</u> jurisdiction "is to protect NLRA

19  preemption"); <u>In re Nat'l Sec. Agency Telecomms.</u>, 633 F. Supp. 2d 892, 901 (N.D. Cal.

20  2007) ("By entertaining federal preemption suits. . . the Supreme Court has cleared the path

21  for parties to seek declaratory and injunctive relief against state action on the basis of federal

22  preemption alone.").  This court has jurisdiction under 28 U.S.C. §§ 1331 and 1337(a).

23                    **V. Discretion Under the Declaratory Judgment Act**

24          Finally, defendant argues that even if this court has jurisdiction, it should decline to

25  proceed under the discretion afforded it by the Declaratory Judgment Act.  28 U.S.C. § 2201

26  *et seq*.  Under the Act, a federal court with jurisdiction "may declare the rights and other

27  legal relations of any interested party seeking such declaration."  <u>Id.</u> § 2201(a).  A district

28  court has discretion to decide whether to exercise jurisdiction over a declaratory judgment

action.  Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1107 (9th Cir. 2011).  In making this decision the court should consider whether exercising jurisdiction would:

> (1) involve the needless determination of state law issues; (2) encourage the filing of declaratory actions as a means of forum shopping; (3) risk duplicative litigation; (4) resolve all aspects of the controversy in a single proceeding; (5) serve a useful purpose in clarifying the legal relations at issue; (6) permit one party to obtain an unjust res judicata advantage; (7) risk entangling federal and state court systems; or (8) jeopardize the convenience of the parties.

Id.  Defendant argues that we should decline to exercise jurisdiction in deference to comity and federalism concerns.

We appreciate that reaching the merits will require our consideration of the validity of a state constitutional amendment.  Despite this, the factors discussed in Herron point towards our exercise of jurisdiction.  Although the meaning of Article 2 § 37 has not yet been interpreted by a state court, plaintiff has alleged that the amendment is preempted by the NLRA regardless of how it is interpreted.  See Rath Packing Co. v. Becker, 530 F.2d 1295, 1307 (9th Cir. 1975) (noting in the context of abstention that a federal court has a duty to exercise jurisdiction if a challenged state law, "although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify" the federal question).  Under plaintiff's theory of preemption, there is no interpretation of Article 2 § 37 that will moot the question of whether it is preempted by the NLRA.  Litigating the preemptive effect of the NLRA will resolve the controversy in a single proceeding, and the relief sought will clarify the legal question at issue.  Plaintiff is also not seeking a declaration that Article 2 § 37 is preempted in every situation.  Instead, it seeks a limited declaration that the amendment is preempted "to the extent that it applies to private employees, employers, and labor organizations subject to the [NLRA]."  Compl. at 5.  Because plaintiff has standing, jurisdiction is proper, and we choose to exercise our discretion to maintain jurisdiction, we deny defendant's motion to dismiss.

## VI. Motion to Intervene

Save Our Secret Ballot ("SOSB") and thirty-four Arizona residents (the "individual applicants") contend that they have a right to intervene under Rule 24(a)(2), Fed. R. Civ. P.

In order to intervene as a matter of right, an applicant must meet four requirements: (1) the application must be timely, (2) the applicant must possess a "significantly protectable" interest that relates to the dispute, (3) the applicant's ability to protect the interest may be impeded by a decision in the action, and (4) the applicant's interest is "inadequately represented by the existing parties" in the action. Nw. Forest Res. Council v. Glickman, 82 F.3d 825, 836 (9th Cir. 1996). Defendant Arizona does not oppose the motion. Plaintiff concedes that requirements one through three are met, but argues that the intervenor-defendants have not shown that their interests are inadequately represented.

Intervenors have the burden to show inadequate representation. The court considers three factors in determining whether representation is adequate: (1) whether interests of an existing party mean that it will "undoubtedly make" all of the intervenor's arguments, (2) whether the existing party is able and willing to make these arguments, and (3) whether the intervenor will offer "necessary elements to the proceeding that other parties would neglect." Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003). The "most important factor" is how the intervenor's interest compares with that of existing parties. Id. A presumption of adequate representation arises when an intervenor and an existing party possess the "same ultimate objective." If they do, then a compelling showing is required to establish inadequate representation. Id. A presumption of adequacy also attaches when the government acts on behalf of its constituency and shares the same interest, which can be overcome by a "very compelling showing." Id. SOSB and the individual applicants in this case seek to defend the validity of Article 2 § 37. Because they desire the same outcome as defendant, and because the individual applicants are Arizona residents, defendant Arizona's representation of both SOSB and the individual applicants is presumptively adequate.

SOSB argues that it has acquired specialized knowledge of the legal and factual issues of this action through its drafting of the amendment's language and through its development of similar ballot measures in other states. This knowledge alone, however, is not a sufficiently compelling reason to overcome the presumption that it is represented adequately. See Prete v. Bradbury, 438 F.3d 949, 958 n.13 (9th Cir. 2006) (knowledge of ballot measure

impact alone not sufficient to support intervention of right absent evidence that state government could not have obtained this knowledge through discovery).

The intervenor-defendants contend that even if defendant currently adequately represents their interests, nothing prevents defendant from abandoning its arguments or failing to appeal from an adverse decision. However, the intervenor-defendants have not made any showing that defendant Arizona is either unwilling or unable to appeal. Absent such evidence, speculation that a state will refuse to appeal an adverse decision regarding the validity its own constitution does not in our view amount to a compelling showing to rebut the presumption of adequate representation. See Freedom from Religion Found., Inc. v. Geithner, 644 F.3d 836, 842 (9th Cir. 2011) (noting that if "mere possibility" that government defendant might not appeal were enough to rebut the presumption of adequacy, almost every case with a government defendant would qualify for intervention).

Next, the intervenor-defendants assert that their interests are broader than that of defendant. The intervenor-defendants' position on the meaning Article 2 § 37 is not entirely clear. However, they might advocate for a broader construction than defendant. The intervenor-defendants argue that the real possibility of resolving the dispute by limiting the construction of Article 2 § 37 raises doubts about the adequacy of defendant's representation. SOSB contends that a limiting construction of the amendment would impair its interests by rendering similar ballot measures it advocates in other states "vulnerable to legal challenges." Mot. to Intervene at 8-9. The individual applicants contend that a narrowing of the protections of the amendment may impair their willingness to "vote their conscience" in a union election. Id. at 8. The individual applicants also argue that a decision in favor of plaintiff will impair their rights under the First Amendment and the NLRA.

Although "willingness to suggest a limiting construction" of a law is an "important consideration" in determining the adequacy of representation, "[i]n order to make a 'very compelling showing' of the government's inadequacy, the proposed intervenor must demonstrate a likelihood that the government will abandon or concede a potentially meritorious reading of the statute." California ex rel. Lockyer v. United States, 450 F.3d 436,

444 (9th Cir. 2006).  The limiting construction feared by the intervenor-defendants might be what defendant is now advocating.  "The [plaintiff] misconstrues the Amendment to require a secret ballot election in every situation where a collective bargaining representative is to be designated.  But it does no more than guarantee that the secret ballot election is available."  Mot. to Dismiss at 7 (emphasis removed).  Thus, if the intervenor-defendants are seeking to defend the amendment as an absolute guarantee of secret ballot elections, then it is possible that defendant's current construction of the amendment's scope might concede or abandon what intervenor-defendants believe to be a "potentially meritorious" interpretation of the amendment.  Lockyer, 450 F.3d at 444.

Even given our command to construe intervention as of right "broadly in favor of intervenors," Freedom from Religion, 644 F.3d at 841, we conclude that the intervenor-defendants have not successfully rebutted the presumption that their interests are adequately represented.  Although the intervenor-defendants may be arguing for an interpretation of the amendment that is broader than defendant's, we cannot say that their broader interpretation would add a necessary element to the analysis that existing parties will neglect.  Plaintiff asserts preemption under both a very broad interpretation of the amendment (Article 2 § 37 guarantees a secret ballot election whenever an election is permitted or required) and under the more narrow construction offered by defendant (secret ballot election guaranteed only when voluntary recognition option not selected).  In other words, both broad and narrow constructions of the amendment are already being litigated by existing parties.  It is not clear that any additional arguments for a broad construction of the amendment or concerning First Amendment freedoms will be necessary elements to a merits analysis of preemption, which focuses on whether a state law regulates a sphere of conduct arguably protected by the NLRA.  See Garmon, 359 U.S. 236 at 245-46, 79 S. Ct. at 780.  Thus, we deny the motion to intervene as of right.

Intervenor-defendants alternatively move to intervene permissively.  Under Rule 24(b), Fed. R. Civ. P., we may permit someone who shares a common legal or factual

question with the main action to intervene provided that this would not cause undue delay or prejudice.  When granting permissive intervention, we have discretion to impose conditions limiting the intervenor's participation.  <u>Dept. of Fair Emp't & Housing v. Lucent Techs., Inc.</u>, 642 F.3d 728, 741 (9th Cir. 2011).  Plaintiff, recognizing the possibility that intervenor-defendants' construction of Article 2 § 37's scope might differ from defendant's, does not oppose intervention if it is limited to new arguments.  Additionally, plaintiff does not dispute that the intervenor-applicants satisfy the threshold requirements of permissive intervention.  Allowing permissive intervention, with limits, will address intervenor-defendants' expressed concerns regarding defendant's representation while preventing undue delay and prejudice.  We therefore grant intervenor-defendants' motion to intervene permissively.

### VII. Conclusion

Therefore, **IT IS ORDERED DENYING** defendant's motion to dismiss (doc. 6).  **IT IS ORDERED GRANTING IN PART AND DENYING IN PART** intervenor-defendants' motion to intervene (doc. 7).  The motion to intervene as of right is **DENIED**.  The motion to intervene permissively is **GRANTED** subject to the following limitations: (1) intervenor-defendants may file motions or oppositions to motions only as to those arguments not asserted by defendant.  No duplication will be permitted; (2) all discovery is to be shared.  Intervenor-defendants shall not duplicate defendant's discovery requests.

DATED this 12th day of October, 2011.


_Frederick J. Martone_

Frederick J. Martone
United States District Judge