**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| National Labor Relations Board, | ) | CV 11-00913-PHX-FJM |
| Plaintiff, | ) ) ) | **ORDER** |
| vs. | ) ) | |
| State of Arizona, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| Save Our Secret Ballot; Joyce McClain; Jose Barraza; R. Scott Brooks, Jr.; Sandra Brown; Dominic T. Drobeck; Rafael Barraza; Jamie Franklin; Ahelardo Garcia; Angelo Granata; Justin Helwig; Jose Hernandez; Raul Hernandez; Reyes Inzunza; Derek Kaiser; Enrique Lara, Jr.; Benny P. Martinez; Gabriel Mendez; Eleuterio Miguel; Chad A. Mullenax; Roger S. Myllenbeck; Adalberto Pena Parra; Tyson Petrie; Jeff Phillips; Shawn Riegle; Daniel Rusch; David Santellano; Roy C. Smith; Kelvin L. Steffen; Johnnie Teller, III; Marco Teran; Steven R. Tulloss; Israel Vargas; Harvey Wietting; Raeleen Kasinec, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Intervenor-Defendants. | ) ) ) | |

The court has before it the intervenor-defendants' motion for certification (doc. 53), plaintiff's response (doc. 56), and the intervenor-defendants' reply (doc. 58). We also have

before us the National Labor Relation Board's ("NLRB") motion for summary judgment ("MSJ") (doc. 49) and separate statement of facts (doc. 50), an amicus brief from United Food and Commercial Workers, Local 99 and Arizona AFL-CIO in support of the NLRB's MSJ (doc. 57), the intervenor-defendants' response (doc. 60), the State of Arizona's ("the State") response (doc. 61), and the NLRB's reply (doc. 63). In addition, we have the intervenor-defendants' MSJ (doc. 51) and separate statement of facts (doc. 52), the State's MSJ (doc. 54) and separate statement of facts (doc. 55), the NLRB's consolidated response to both motions (doc. 59) and controverting statement of facts (doc. 59-1), the intervenor-defendants' reply (doc. 62), and the State's reply (doc. 64).

**I**

The facts are undisputed. The NLRB is the agency tasked with administration of the National Labor Relations Act ("NLRA"). See 29 U.S.C. §§ 151, 153. On November 2, 2010, a majority of Arizona voters approved adding Article 2 § 37 to the Arizona Constitution.[1] It states that "[t]he right to vote by secret ballot for employee representation is fundamental and shall be guaranteed where local, state or federal law permits or requires elections, designations or authorizations for employee representation." Id. To date, Arizona courts have not addressed Article 2 § 37.

The NLRB asks for a declaration that Article 2 § 37, to the extent that it applies to employers, private employees, and labor organizations subject to the NLRA, is preempted because it creates a state forum to protect employee representation rights, a task which Congress assigned exclusively to the NLRB.[2] The intervenor-defendants and the State each cross-move for summary judgment.

---

[1] Article 2 of the Arizona Constitution is the "Declaration of Rights."

[2] The NLRB alleged in its original complaint that Article 2 § 37 was also preempted because it eliminated the possibility of voluntary recognition of a union (doc. 1). It amended the complaint to eliminate this argument after the State represented in earlier stages of this litigation that Article 2 § 37 guarantees a secret ballot election when the voluntary recognition option is not selected (doc. 31).

- 2 -

**II**

The Arizona Supreme Court may answer questions of Arizona law certified to it by a district court "which may be determinative of the cause then pending in the certifying court," and for which there is no controlling state court precedent. A.R.S. § 12-1861. Under federal law, it is "manifestly inappropriate to certify a question" if there is no uncertain state law question whose resolution may affect the federal claim. Stenberg v. Carhart, 530 U.S. 914, 945, 120 S. Ct. 2597, 2617 (2000) (quoting Houston v. Hill, 482 U.S. 451, 471, 107 S. Ct. 2502, 2514 (1987)).

The intervenor-defendants move to certify the following question to the Arizona Supreme Court: "[d]oes Ariz. Const. Art. II, § 37 create a parallel state enforcement mechanism for protecting employee representation rights in addition to such enforcement mechanisms that may exist under the [NLRA], 29 U.S.C. § 151, *et seq.*?" Mot. for Certification at 1. The intervenor-defendants argue that the resolution of this question may be outcome-determinative, as the NLRB's sole argument for preemption will evaporate if the Arizona Supreme Court holds that Article 2 § 37 does not create a cause of action. Even if the court holds that it does, the intervenor-defendants argue that the court's articulation of the scope and nature of the cause of action will permit us to better assess the arguments raised by the parties here.

Although there is no state court precedent addressing whether Article 2 § 37 may be enforced in state courts, ample precedent in Arizona shows that litigants have brought lawsuits to enforce state constitutional rights, including lawsuits to enforce Article 2 rights. See, e.g., Chavez v. Brewer, 222 Ariz. 309, 320, 214 P.3d 397, 408 (Ct. App. 2009) (plaintiff stated a claim for violation of Article 2 § 21, the right to a free and equal election); Aida Renta Trust v. Maricopa Cnty., 221 Ariz. 603, 607, 212 P.3d 941, 945 (Ct. App. 2009) (taxpayer sued county for violation of Article 9 § 1); Bailey v. Myers, 206 Ariz. 224, 230, 76 P.3d 898, 904 (Ct. App. 2003) (property owners brought suit alleging violation of Article 2 § 17); Mecham v. Gordon, 156 Ariz. 297, 303, 751 P.2d 957, 963 (1988) (governor facing impeachment had rights under both the Federal Constitution and Article 2 of the Arizona

1  Constitution; remedy for violation of these rights "will be by appropriate motion in superior
2  court"). Accordingly, the proposed question is not one for which there is no precedent at all.
3       Moreover, we disagree that the question proposed by the intervenor-defendants is
4  determinative of the question before us. Although Article 2 § 37 does not on its face create
5  a state court remedy, the parties here have all agreed (at least, for the purposes of these
6  motions) that litigants may invoke Article 2 § 37 in state court proceedings. Indeed, the
7  intervenor-defendants argue that Article 2 § 37 is not preempted, notwithstanding the
8  existence of a state court action. Moreover, whether the Arizona Supreme Court might adopt
9  a narrowing construction of the amendment or more narrowly define the scope of a cause of
10 action is not crucial to our resolution of this action. This is because the NLRB has brought
11 a facial challenge to Article 2 § 37, which can only succeed if it shows that "no set of
12 circumstances exists under which the [amendment] would be valid." United States v.
13 Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987). According to the NLRB, no
14 matter what interpretation of Article 2 § 37 the Arizona Supreme Court adopts, it is
15 preempted because "the right to a secret ballot election has long been defined by the NLRA."
16 Resp. to Mot. for Certification at 7.

17      We have the duty to decide federal questions when they are presented to us. See
18 Potrero Hills Landfill, Inc. v. Cnty. of Solano, 657 F.3d 876, 889-90 (9th Cir. 2011) (citation
19 omitted). At its heart, this action involves a quintessential federal question: whether a state
20 law is preempted by operation of the NLRA and the Supremacy Clause. See Local 926, Int'l
21 Union of Operating Eng'rs, AFL-CIO v. Jones, 460 U.S. 669, 675-76, 103 S. Ct. 1453, 1458
22 (1983) (Supreme Court has "often been asked" to assess whether state causes of action are
23 preempted by the NLRA). Given that this is a facial challenge to Article 2 § 37, that there
24 is state precedent supporting the premise that Arizona provides a judicial forum for the
25 vindication of state constitutional rights, and considering the delay that would result from
26 certification, we conclude that certification of the intervenor-defendants' question is
27 unnecessary.
28

**III**

By design, federal and state governments operate independently. Their dual existence, however, creates the possibility that federal and state law may clash. Arizona v. United States, __ U.S. __, 132 S. Ct. 2492, 2500 (2012). Under the Supremacy Clause, Congress may preempt state law. Id. Absent an express preemption provision, federal law preempts state law when Congress determines that it must exclusively regulate a particular field, or when state law impermissibly conflicts with federal law. Id. at 2500-01. We begin with the assumption that the state's police power is not superseded, "unless that was the clear and manifest purpose of Congress." Id. at 2501 (citation omitted).

The NLRA states that it is "the policy of the United States to. . . protect[] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing." 29 U.S.C. § 151. Under § 7 of the NLRA, employees possess "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection," and have the right to refrain from such activities. Id. § 157. The NLRB is empowered "to prevent any person from engaging in any unfair labor practice." Id. § 160(a). Section 8 of the NLRA establishes that it is an unlawful labor practice for employers "to interfere with, restrain, or coerce employees" in their exercise of § 7 rights. Id. § 158(a)(1). One example of an unfair labor practice is an employer's refusal to bargain with the bargaining representative certified by the NLRB. NLRB v. Fin. Inst. Emps. of Am., Local 1182, 475 U.S. 192, 198, 106 S. Ct. 1007, 1010 (1986); see also 29 U.S.C. § 158(a)(5).

The NLRA provides two paths for choosing a bargaining representative. A bargaining representative may be voluntarily recognized by an employer if there is convincing evidence of majority support. Alternatively, the NLRB may certify a union as the bargaining representative after it conducts a secret ballot election. See Linden Lumber Div., Summer & Co. v. NLRB, 419 U.S. 301, 306-307, 95 S. Ct. 429, 432-33 (1974). Section 9 of the NLRA addresses elections and questions of representation. When questions regarding

1 representation arise, an employee, a labor organization, or an employer may file a petition 2 with the NLRB. 29 U.S.C. § 159(c)(1). If the NLRB determines that there is a question of 3 representation, it is instructed to "direct an election by secret ballot" and "certify the results 4 thereof." Id. Once the NLRB has held an election and certified the results, the only way an 5 employer may obtain judicial review of the election is to refuse to bargain with the election 6 winner, wait for the NLRB to bring an unfair labor practice charge against it, and challenge 7 the NLRB's decision in federal court. See Magnesium Casting Co. v. NLRB, 401 U.S. 137, 8 139, 91 S. Ct. 599, 600 (1971); see also Napili Shores Condo. Homeowners' Ass'n v. NLRB, 9 939 F.2d 717, 718 (9th Cir. 1991). A federal court "will not overturn [the NLRB's] decision 10 to certify a union unless the [NLRB] has abused its discretion." Napili Shores, 939 F.2d at 11 718.

12 The NLRB has discretion to decline asserting its jurisdiction "over any labor dispute 13 involving any class or category of employers." 29 U.S.C. § 164(c)(1). Under these 14 circumstances, states are not prevented "from assuming and asserting jurisdiction over labor 15 disputes over which the [NLRB] declines. . . to assert jurisdiction." Id. § 164(c)(2). Labor 16 disputes by definition include controversies over employee representation. Id. § 152(9).

17 The NLRA does not contain an express preemption provision. Metro. Life Ins. Co. 18 v. Massachusetts, 471 U.S. 724, 747, 105 S. Ct. 2380, 2393 (1985). Nor does it reveal "a 19 congressional intent to usurp the entire field" of labor relations. Brown v. Hotel & Rest. 20 Emps. & Bartenders Int'l Union Local 54, 468 U.S. 491, 501, 104 S. Ct. 3179, 3185 (1984). 21 In effect, however, the NLRA has "largely displaced" regulation of industrial relations by the 22 states. Wis. Dep't of Indus., Labor & Human Relations v. Gould, 475 U.S. 282, 286, 106 S. 23 Ct. 1057, 1061 (1986). From this principle emerged the general rule of preemption set forth 24 in San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S. Ct. 773 (1959). First, 25 "[w]hen it is clear or may fairly be assumed that the activities which a State purports to 26 regulate are protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 27 8, due regard for the federal enactment requires that state jurisdiction must yield." Id. at 244, 28 79 S. Ct. at 779. Moreover, "[w]hen an activity is arguably subject to § 7 or § 8 of the

1 [NLRA], the States as well as the federal courts must defer to the exclusive competence of
2 the [NLRB] if the danger of state interference with national policy is to be averted." Id. at
3 245, 79 S. Ct. at 780. There are, however, exceptions. State regulation of activity will not
4 be preempted under Garmon if the activity is "a merely peripheral concern" of the NLRA,
5 or if it "touche[s] interests so deeply rooted in local feeling and responsibility that, in the
6 absence of compelling congressional direction," we cannot infer that Congress removed the
7 state's power to act. Id. at 243-44, 79 S. Ct. at 779. And state jurisdiction will not be ousted
8 "where the particular rule of law sought to be invoked before another tribunal is so structured
9 and administered that, in virtually all instances, it is safe to presume that judicial supervision
10 will not disserve the interests promoted by the federal labor statutes." Farmer v. United Bhd.
11 of Carpenters & Joiners of Am., Local 25, 430 U.S. 290, 297, 97 S. Ct. 1056, 1062 (1977)
12 (citation omitted). When analyzing whether a law is preempted under Garmon, courts
13 conduct a "balanced inquiry" into the nature of the interests at stake and the "effect upon the
14 administration of national labor policies of concurrent judicial and administrative remedies."
15 Id. at 300-01, 97 S. Ct. at 1063-64.

**IV**

17 The State argues that although Article 2 § 37 may relate to the NLRB's authority to
18 decide representation disputes under § 9 of the NLRA , it is not clear whether Article 2 § 37
19 would interfere with the NLRB's primary jurisdiction to identify unfair labor practices. Thus,
20 the State concludes that a finding of preemption in this case would require an extension of
21 Garmon to § 9 of the NLRA. But, as explained above, NLRB election proceedings and
22 certification of a union under the procedures set forth in § 9 of the NLRA are only judicially
23 reviewable in the context of a challenge to the NLRB's decision concerning an unfair labor
24 practice charge under § 8 of the NLRA. In this sense, the election proceeding and the unfair
25 labor practice charge (over which the State concedes the NLRB has primary jurisdiction) "are
26 really one." Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 158, 61 S. Ct. 908, 915
27 (1941); see also Pa. Nurses Ass'n v. Pa. State Educ. Ass'n, 90 F.3d 797, 802 (3d Cir. 1996)
28 (as part of NLRB's responsibility under § 9 to select union bargaining representative, NLRB

1 has authority to "take action needed to ensure the workers' freedom of choice"); Aeroground,
2 Inc. v. City & Cnty. of S.F., 170 F. Supp. 2d 950, 955-56 (N.D. Cal. 2001) (applying Garmon
3 to airport commission's rule requiring card check rather than NLRB-conducted secret ballot
4 election, noting that NLRB has authority to address unfair labor practices, including disputes
5 arising out of employee's § 7 right to elect union representation).

6 Although Article 2 § 37 guarantees the "right to vote by secret ballot for employee
7 representation," it does not, on its face, address how, when, or by whom these elections are
8 conducted. Without an actual state court proceeding addressing Article 2 § 37, we are left
9 to speculate how state litigation concerning the right to a secret ballot may arise, and
10 precisely what conduct might be challenged. However, given that the NLRA places the
11 responsibility on the NLRB to conduct secret ballot elections, the outcome of which is only
12 judicially reviewable in the context of an unfair labor practice proceeding, we conclude that
13 state court proceedings invoking Article 2 § 37's guarantee of secret ballot elections will at
14 least arguably overlap with the NLRB's jurisdiction under § 8 of the NLRA to address unfair
15 labor practices. See Garmon, 359 U.S. at 245, 79 S. Ct. at 780.

**V**

17 Neither defendant argues that secret ballot elections are a merely peripheral concern
18 of the NLRA. Instead, defendants assert that Article 2 § 37 falls under the Garmon exception
19 for interests "deeply rooted in local feeling and responsibility." Garmon, 359 U.S. at 244,
20 79 S. Ct. at 779. Whether a particular state regulation falls under this exception requires "a
21 sensitive balancing of any harm to the regulatory scheme established by Congress, either in
22 terms of negating the [NLRB's] exclusive jurisdiction or in terms of conflicting substantive
23 rules, and the importance of the asserted cause of action to the state as a protection to its
24 citizens." Jones, 460 U.S. at 676, 103 S. Ct. at 1459. The State argues that it has an
25 "overriding interest in protecting employees from intimidation and undue influence when
26 deciding whether to be represented by a union." State MSJ at 10. Additionally, the
27 intervenor-defendants argue that Article 2 § 37 protects freedom of association by favoring
28 secret ballot elections over voluntary recognition, an option that they argue "supplants the

- 8 -

freedom of choice guaranteed by the [NLRA]." Intervenor-Defendants' MSJ at 9. The NLRB counters that regardless of the existence or strength of state interests, "the inevitable result" of Article 2 § 37 is that Arizona courts will address "the same secret ballot issues" that the NLRB is "assigned to resolve." NLRB Resp. at 11. Thus, the NLRB argues that Article 2 § 37 must be preempted, as a state court proceeding addressing the right to a secret ballot election would duplicate issues presented to the NLRB when questions of representation arise. See Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters, 436 U.S. 180, 197, 98 S. Ct. 1745, 1757 (1978).

The NLRB presumes that a state proceeding concerning Article 2 § 37 will mirror issues arising in an NLRB proceeding. This presumption is merely speculative, however, because at this juncture we have no state court proceeding to examine. We do not know, for example, whether Article 2 § 37 will result in the State conducting, supervising, or certifying its own elections. See La Crosse Tel. Corp. v. Wis. Emp't Relations Bd., 336 U.S. 18, 25-26, 69 S. Ct. 379, 382-83 (1949) (state law permitting state board to conduct secret ballot election and certify results when question of employee representation arises preempted by NLRA); Bethlehem Steel Co. v. N.Y. State Labor Relations Bd., 330 U.S. 767, 775-777, 67 S. Ct. 1026, 1031 (1947) (state law outlining procedure for determining collective bargaining unit preempted by NLRA); Mich. Cmty. Servs. Inc. v. NLRB, 309 F.3d 348, 361 (6th Cir. 2002) (NLRB had "exclusive jurisdiction to direct or supervise" union elections at issue).

Moreover, we do not know when such a dispute may arise. If a state action to enforce Article 2 § 37's secret ballot guarantee is only brought after the NLRB has declined to exercise its jurisdiction over a particular class of employers, the state may be statutorily permitted to assume jurisdiction over the controversy. See 29 U.S.C. § 164(c)(2); NLRB v. Olaa Sugar Co., 242 F.2d 714, 720 (9th Cir. 1957) (when considering questions presented to it, NLRB has "right to determine the propriety of exercising its power on a given state of facts"). The state court action might arise after the NLRB has granted comity to a particular union election conducted by an Arizona agency. See Pl.'s Reply at 8. In that sense, the state court may only be asked to address issues that the NLRB has chosen not to address.

Alternatively, an employee might bring an action in state court to petition the state to conduct a secret ballot election rather than file a petition with the NLRB pursuant to § 9. Or, a party may bring an action challenging an election held by the NLRB. The state court might, if faced with those inquiries, analyze whether Garmon principles preempt its own jurisdiction over a particular action. See Ethridge v. Harbor House Rest., 861 F.2d 1389, 1400 (9th Cir. 1988) ("Nothing in the history of the Garmon doctrine suggests that state courts are incapable of determining their own jurisdiction."). This is a function that Arizona courts already perform. See, e.g., Smith v. CIGNA HealthPlan of Ariz., 203 Ariz. 173, 52 P.3d 205 (Ct. App. 2002) (analyzing whether state law claims were preempted by the NLRA); Hill v. Peterson, 201 Ariz. 363, 35 P.3d 417 (Ct. App. 2001) (same); Chavez v. Copper State Rubber of Ariz., Inc., 182 Ariz. 423, 897 P.2d 725 (Ct. App. 1995) (same). If a state court holds that an action invoking Article 2 § 37 is preempted by the NLRA, it is hard to see how the NLRB's exclusive jurisdiction to decide the underlying representation issue would be negated.

Thus, the negation of or intrusion into the NLRB's jurisdiction to investigate unfair labor practices or resolve questions of employee representation could vary widely depending on the procedural and factual posture of a particular state court proceeding. See Sears, 436 U.S. at 197, 98 S. Ct. at 1757 ("critical inquiry" is whether state court controversy is identical to "that which could have been, but was not, presented to" the NLRB) (emphasis added); see also Farmer, 430 U.S. at 297, 97 S. Ct. at 1062. Moreover, deciding that a state court proceeding creates a realistic risk of interference with the NLRB's primary jurisdiction is only half the battle. We must still balance the harm to the regulatory scheme with the importance of the state cause of action in the protection of its citizens. See Jones, 460 U.S. at 676, 103 S. Ct. at 1459. Without details concerning when actions invoking Article 2 § 37 arise, what they look like, and who brings them, we cannot perform the "sensitive balancing" the law requires. See id.

On its face, Article 2 § 37 does not address who must hold secret ballot elections, who must ensure that these are conducted appropriately, and when in the course of union

organizing these must occur. It guarantees the right to election by secret ballot, a process that the NLRB itself must follow when it determines an election is needed. See 29 U.S.C. § 159(c)(1) ("If the [NLRB] finds. . . that such a question of representation exists, it <u>shall</u> direct an election <u>by secret ballot</u>") (emphasis added). It is possible that state litigation invoking Article 2 § 37 may impermissibly clash with the NLRB's jurisdiction to resolve disputes over employee recognition, conduct secret ballot elections, and address unfair labor practices. But because we are presented with a facial challenge to a law for which there "is a basic uncertainty about. . . how it will be enforced," it "would be inappropriate" for us to assume that Arizona courts will construe, and enforce, Article 2 § 37 "in a way that creates a conflict" with the NLRA. See <u>Arizona</u>, 132 S. Ct. at 2510. Thus, we cannot conclude as a matter of law that Article 2 § 37, on its face, is preempted by the NLRA. Our ruling today, however, should not be construed to foreclose as-applied challenges if and when they materialize.

## VI

**IT IS ORDERED DENYING** the intervenor-defendants' motion for certification (doc. 53). **IT IS ORDERED DENYING** the NLRB's motion for summary judgment (doc. 49). **IT IS ORDERED GRANTING** the intervenor-defendants' motion for summary judgment (doc. 51). **IT IS FURTHER ORDERED GRANTING** the State's motion for summary judgment (doc. 54). The Clerk shall enter judgment in favor of defendants and against plaintiff.

DATED this 5th day of September, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge